Good morning, Your Honor. Good morning. I'm George Howard for Defendant Nordstrom, Inc. With me at council table is my co-counsel, Julie Dunn, and in the audience is Sarah Johnson of Nordstrom's legal department. I'd like to reserve five minutes for rebuttal, please. There are three issues we want to talk about today, Your Honor. One is the standard of review. Next is contract formation, and last is the unconscionability argument. On the standard of review, we believe it's very clear. There are no facts in dispute. There's documents. There's no real conflicting testimony. There should be de novo review of the district court's order. Now, the district court based her order on a finding that there was no contract formed to arbitrate, even though there were three arbitration agreements before her. And the California Supreme Court has held in the Pinnacle case that in determining the rights of parties to enforce an arbitration agreement within the FAA, courts apply state contract law while giving due regard to the federal policy favoring arbitration. And what happened here was the district court failed to do that. The Pinnacle case goes on to say that the FAA precludes judicial invalidation of an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses, including proof of actual notice, meaningful reflection, signature by all the parties, or a unilateral modification clause. The district court here denied the arbitration motion on two grounds. One is that Nordstrom failed to tell the employee, Ms. Davis, that if she continued her employment, she would be bound by the agreement, and secondly, failed to give 30 days' notice of the changes in the agreement. And to understand that, first of all, both of those were erroneous. One is there was no requirement to tell her that her continued employment was acceptance. And secondly … And you say that because California case law is clear on that? Correct. Correct. The DiGiacinto case, the case involving Brown and Root, cases the district court herself cited and then tried to distinguish. And the second reason is there was no requirement to give 30 days' notice either. The only requirement came from a prior pre-2011 arbitration agreement that was superseded. And I want to talk … You're talking about the 30 … you're saying there's no 30-day notice requirement with respect to the August change. Correct. Correct. You concede that there was a 30-day notice with respect to the July change, right? We concede that the July agreement did not go into effect for 30 days because the pre-July agreement said there would be 30 days' notice. I thought you actually conceded that you had an obligation to give 30 days' notice and that California law requires that. There's case law that says if you promise to give notice, then you're going to be bound to that promise. Yes. We concede that we were obligated to follow the July, the pre-July agreement … Right. … until the July agreement modified it. After the July agreement went into effect 30 days later, there was no … So my first question is if we find that you did not, that Nordstrom did not give 30 days' notice, then the rest doesn't matter, does it? Well, if you put it that way, I think I agree with you. But we did. The agreement itself, the prior agreement said we'll give 30 days' notice. The July agreement was given out. There's no question that Ms. Davis got it. And after 30 days, she'd have the notice. I understand your argument is what it is, that you did give the 30 days' notice. But I'm just trying to make sure I understand which issues need to be addressed if certain conclusions are reached. Right. And if the conclusion is that the July change did not comply with the pre-June 30-day notice requirement, then all the rest of the arguments about the August change don't matter anymore. Well, first of all, I think the fact that Ms. Davis stayed on with Nordstrom for more than two years after these two agreements, not one, but two agreements, would eliminate or cure, I'm not sure what the word is, any defect in the giving of the notice. Because she was told in August, this agreement is effective immediately, and she stayed on. I mean, she stayed on after the July agreement. In fact, the evidence in the record is she herself, who was a supervisor, was involved in telling her employees about the August agreement. So I don't agree that simply because if you were to find there was no actual notice in the sense of a document saying you will get 30 days' notice, this July agreement is effective in 30 days, the absence of that kind of a statement would mean there's no arbitration agreement, given the other facts that are in the record. Can you just point me to where in that pre-July agreement is the 30-day notice requirement? I have that little booklet in front of me, but I just don't know where. Excerpt of record, page 77. From time to time, it may be necessary to make changes, et cetera. Nordstrom will provide 30 days' written notice of substantive changes. This will allow employees time to consider the changes and decide whether or not to continue employment. So the employees were told that you have 30 days to consider employment, and Ms. Davis clearly stayed for far more than 30 days. So your view is that as long as the employer provides notice of the change and then takes no steps to enforce it within the 30-day period, that's all? And the reason is because you can't treat arbitration agreements any differently than any other form of contract. We know that from numerous cases. And just like Nordstrom could say to an employee, okay, you used to make $25 an hour, now you make $13 an hour, if the employee stays, they've accepted the $13 an hour. The employee can't come back two years later and say, oh, by the way, I really didn't want the $13 an hour. The arbitration provisions have to be given the same contractual rules as everything else. It seems like the district court said that that sounds good, but it sounds like you're making that up after the fact and cited to a series of facts from which it inferred that no notice was given. And that this is just a conclusory statement. And the court cites to these the actual communications that use words like immediate to imply that the change actually occurred at the time that the thing was given out and that the cover letter that was sent out from the consulting firm K&P, whatever it's called, Nordstrom recently made changes using the past tense, that the changes have already been made, not that they will be made or will be effective at a certain date. Why shouldn't, and there are some other things the court relied on, why shouldn't we credit the district court's finding in that regard in the absence of any other evidence to the contrary? Well, two reasons. One is these collateral items, things that the HR staff was using to talk to people about, are not contractual documents. The arbitration agreement is the contractual document. And that's what the preexisting agreement and the July agreement and the August agreement. Secondly, the statement that you referred to, Your Honor, about immediate effect, is about the August agreement, which was effective immediately, not about the July agreement. And then third, if you look at the item, I think it's page 66 of the record that the district court was referring to, the district court failed to note that there's a statement on there, and this is about the July agreement, if you're currently in AAA, meaning arbitration, you will not experience a change. So it's not true that that document even by implicitly says that there's an immediate change, especially not given the language of the preexisting contract. Basically, and to your point, why should you not credit it, the district court wasn't weighing evidence. The district court was just looking at undisputed documents and basically drawing conclusions that we feel are unfounded. There's nowhere in those documents that says this is effective immediately, and there's nowhere in it that says it somehow affects the preexisting agreement, the pre-2011 agreement. Really what happened here was that July agreement changed two things. It imposed, it eliminated the 30-day provision, and it imposed the class waiver, which is at issue here. A couple of interesting facts about this. At the time the July agreement went into effect, this case had not been filed. The case was not filed until August. Ms. Davis had had a prior case. She then had a case in August. She clearly had counsel at the time. And so she ---- Well, there was a prior case brought in state court, right? Right. And that was ---- It was actually removed, and I believe it was missed. Removed and then dismissed. Dismissed by her. And at the time of the July agreement being effective, 30 days after it was sent out, this case that we're here today about had not been filed. Why does that matter? Well, it only matters in the sense that she ---- It kind of goes to her unconscionability argument that somehow she was ---- Well, you're raising an issue that I was going to raise with you in the next ---- in the Marin Bantano case, but since you brought it up, I'll address it now. There are two cases, California cases, that are not discussed in the briefs. I'm not sure the issue is preserved in this case, but the Avery case and the Pellet case. And both of those cases suggest that it's the accrual of the cause of action date that counts, not the date on which the action was filed. And if we're relying on California law, those are California appellate court cases, both recent, one 2012, and Avery was in July of 2013. If we're relying on California law, why wouldn't that govern? So the accrual is before. It had happened in references back to the State. Well, first of all, I have to admit I didn't read those cases for the argument since they weren't in the briefs. And I'm not sure accrual for what purpose, for the statute of limitations or for some other purpose. But either way, the arbitration agreements here say they cover past, present, and future disputes, right? This case hadn't been filed. Well, just so I can be so you know, Avery says that it's a breach of the implied covenant of good faith and fair dealing to apply an arbitration agreement to an already accrued and or filed action. And Pellet says that the contract is illusory, that there is no contract. Well, okay. On the illusory contract, first of all, whatever the California courts say about California law can't trump the FAA. We know that. And the Supreme Court cases were very clear that the arbitration agreements have to be enforced. This one was, there was a preexisting agreement. There's the July agreement that imposes the class action waiver. She stays on. And there's no case at the time that agreement is imposed, the July agreement, that would be retroactive, too, so to speak, to try to answer your question. I'd have to go back and read those cases. There's also, however, a case called 24-Hour Fitness we can give you the cite for. It's a longstanding case that says just because a party reserves the right to amend unilaterally a contract doesn't make it illusory. And I'd like, I would like to follow up on this because this is an issue I was planning to talk about in the other case, Balsanian. At-will contracts in some respects are always illusory because either party can terminate them at any time or change them. Just like Nordstrom could change the at-will conditions, not just arbitration, but where the person worked or how much they were paid, so could Ms. Davis quit. We couldn't say, oh, wait, you have to wait two weeks before you quit. So all at-will contracts, I wouldn't call them illusory. It's just that they can be changed. And I think that the point that Your Honor is driving at is was there something improper about saying, at least for the Balsanian case, which was pending, that, well, you had a pending case and now the arbitration agreement comes into effect. I think I probably want to save my time for that. Let me talk about it. I want to come, if you don't mind, just, I really want to come back to this 30-day notice thing because I think as I read this case, that's, it all really hinges on this 30-day notice question. And it just seems to me common sense. If you tell the employees in your handbook that you're going to give them 30 days notice of a change, then when you make the change, you give them something that says we're making this change and it will take effect in 30 days. Now, your position is that that's not what 30 days notice means. What it means is we make the change and if nobody does anything within 30 days to, you know, exercise a right or take some action, then it becomes effective after that 30 days. That just doesn't sound a lot like giving somebody 30 days notice of the change. Just from a common sense point of view. Let me try two responses to that. One is if you look at what it said, this notice is to allow you time to consider the changes and decide whether or not to continue employment. Yeah. All right, which is what happened. And the second thing is there's clear California law, I believe the case is Brookwood, that says when parties are entering into a contract, neither party has to sit there and explain to the other one the legal meaning of the contract. I mean, this agreement was already in place. The July agreement was rolled out. Ms. Davis doesn't dispute she got it. She stayed employed. It wasn't Nordstrom's job to explain to her what had already been told, which is that if you remain employed, you're bound by the agreement. Okay. Okay. We'll give you a couple of minutes for review. Thank you, Your Honor. Let's hear from the plaintiffs. May it please the Court. Good morning. My name is Cortland Creekmore. I represent with my firm, Scott Cole and Associates, the plaintiff and appellee, Fann Davis. Why don't you just jump straight to this 30-day notice provision? Because I agree with Judge Smith. To me, that's where the case turns. But I would be inclined to say it turns against you. So maybe explain why you think the 30-day notice provision wasn't complied with here. Well, Your Honor, I think that the 30-day notice provision wasn't complied with because the ñ Nordstrom had a course of dealing with Ms. Davis under the pre-June and August provisions in which they said that they would give her 30 days' notice. They then attempted to, in the new provision, change the notice provision from 30 days to effective immediately. The district court noted that it was ñ that there was not sufficient evidence that Nordstrom had made it clear to Ms. Davis and other Nordstrom employees, presumably, that the provision updating the arbitration ñ excuse me, the arbitration provision update was effective immediately or was effective within 30 days from the date of the change. Well, the notice that ñ I mean, I'm looking at the language. It's on ER ñ what was it, 77, I think. Maybe you can pull it up in front of you. It ñ all it says is from time to time it may be necessary to make changes to the program materials, meaning this arbitration program, to comply with changes in the law. But Nordstrom will provide 30 days' written notice of substantive changes. And this notice is to provide you an opportunity to decide whether you basically want to stay employed with us subject to these changes. So what evidence does Nordstrom need to come forward with other than we did, in fact, give notice to your client and we didn't do anything for 30 days and she remained employed? End of story. Well, if the conclusion is that her showing up at work the next day after she ñ Not the next day. After the 30th day. She had the 30 days in which to decide whether she wanted to remain employed subject to these new terms. They never did anything to enforce the new terms. And on the 31st day, there's now a new contract. I just don't see what other evidence Nordstrom was required to come forward with to show that they complied with this provision of their contract. So, in other words, it's ñ Nordstrom's saying it's the employee's obligation to go back. And we say we're going to make this change. You need to go back, take a look at everything, make a decision whether you want to stay here or not, and make that decision within 30 days. The prior handbook said you got 30 days, essentially. So Judge Watford is saying, you know, the employee's got a burden here. It's not all on the employer. Well, according to the Porter Declaration that's cited, defendant offered no evidence that it told the employees, and I'm quoting from the district court's opinion, that the policy didn't go into effect immediately. But isn't that asking Nordstrom to prove a negative? I mean, because nothing happened, how can they prove that they implemented it earlier if nothing happened? Now, if something had happened and they said, no, we made the change, you know, two weeks ago. We changed the policy. You didn't notice that. Then we'd have some evidence that they were actually implementing it immediately. But here, nothing happened. So how do they prove that what they say is true if nothing happened to cause them to take an action? You want them to sort of prove this negative, I think. I admit that there is a bit of confusion as to the effective time period of the arbitration provision. I think that it's within the district court's authority to determine based on the potential uncertain the uncertainties that she encountered and interpreted in reviewing the various arbitration agreements and the declarations that support them. She came up with a factual finding. Is it a clearly erroneous factual finding? The plaintiff's position is that for a determination as to whether or not the plaintiff assented to the contract term, that's a factual determination within the district court's authority. Let me ask you this. Let's say that we disagree with you on the validity of the July agreement. Let's say that we look at that and we just say, you know what, she stayed employed for 30 days. On the 31st day, a new agreement took effect. I take it if we find that, we don't need to even reach the validity of the August change, right? That's correct, Your Honor. We would be – I think we would be dead in the water. Factually speaking, if you're going to find her factual ruling to be clearly erroneous, then there's not much we can say beyond that. Okay. Well, let me ask a second question then. I think you all have briefed pretty extensively the unconscionability question, which the district court never reached. Am I right about that? That's correct, Your Honor. What's your position on whether, should we go forward if we find that there was a valid contract formed in July of 2011? Should we go on to decide whether that new provision is unconscionable, or should we just send it back to the district court to do that? I think that you have to send it back to the district court, Your Honor, because that's a factually intensive inquiry where the district court has not yielded any analysis or interpretation or made any findings that would be appropriate to go forward  Could I – I want to make sure I understand you. I thought your argument was, even if we find that they gave 30 days' notice, that you still contend that the August change was invalid because I thought you had a the Asmus case or cases that interpret the Asmus case, Cusich and Dow that there's an obligation to tell the employee that your continued work after the change is made constitutes acceptance. That's a fair question, Your Honor. And I – Is that your argument? It potentially is our argument. However, it's not a – I don't think that it's a hard and fast rule that the employee – I can't say that under California law the employee must be told specifically that your employment – continued employment would, in fact, manifest your assent. However, that is a factor that has been relied upon by the Dow and the Cusich courts. In making the determination, they found it to be a weighty factor, if you will. I do want to comment, though, on the DiGiassento case. This seems to be one upon which Nordstrom hangs its hat in California law interpretation, and I think it's worthy of exploration just for a moment. And that is that in the DiGiassento case, the appellate court there found that the reduction in wage for Mr. DiGiassento was akin to a disciplinary function. So apparently he was in danger of losing his job, whether it was due to lack of resources or performance or whatever, and rather than fire him or cut him loose, they cut his wages. He was notified of his wage cut. Presumably he got pay stubs on a regular basis, continuing to notify him that his pay was reduced. And then he filed a claim for back wages. The court said, well, it's akin to a kind of a disciplinary motivation. I don't see how this is remotely analogous to a disciplinary. I would find it quite surprising if Nordstrom were to assert that updating an employment to include arbitration of various aspects of claims that might arise between the parties would somehow be akin to some sort of disciplinary, disciplinary function. I don't think that it manifests itself and carries over to the employment arbitration or the arbitration, rather, of employment claims area. Certainly in the DiGiassento case, it wasn't as though he was being, had wages taken from him. And in the present case, it is mildly odious that the request is to make this arbitration provision apply retroactively. And, again, I don't see the connection between the two. How is it applying retroactively? How is the July agreement applying retroactively with respect to your claim? For past conduct. Not going, so it wasn't going forward, but it would apply to anything that had happened between Nordstrom and Ms. Davis in the past. I see. The basis for the lawsuit. Correct. That's correct. And I would just like to say as well that the clearly erroneous standard, and, again, if that's not where we're going, then I would, I totally understand. But I think that, you know, there's some pretty good language that, coming out of the the court, the court is not going to be left when you're reviewing the, a finding, rather, is clearly erroneous when, although there's evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. And even if the district court would have, even if the ---- Why is this a clearly erroneous standard in your view? I don't, I'm not sure I understand that. Aren't we, aren't we determining essentially a question of law here? I think that's how Nordstrom would want you to see it, Your Honor, but I think we should Well, tell me why It's a question of fact as to whether she assented to the arbitration agreement, whether she assented to the new terms of the contract that were presented to her, Ms. Davis. And that's a factual determination. Okay. If you don't have anything further, we'll hear a little bit of rebuttal from counsel for Nordstrom. Thank you, Your Honor. I'll try to be very brief. First of all, it is de novo because the acceptance issue is a legal conclusion and the facts aren't disputed. As far as the arguments about DiGiacinto and needing to give specific notice, it's very clear that courts can't, and I quoted from the Pinnacle case, can't require things of arbitration agreements they don't require of other types of contracts. There are several cases, and the most notable one I think is the Brown and Root case that we cited where somebody gets an arbitration agreement in the mail and that's the deal. It doesn't require any notice. I think we've already gone through the July 30-day provision. I won't spend any more time on that. But the Doubt case that I believe was mentioned actually I think supports Nordstrom. If you read the language of it, it talks about the employee being given notice of the change and it becomes effective. The P.F. Chang case that the district court tried to rely on even said it's not interpreting California law. One other fact that's interesting is Ms. Davis, after the August agreement, actually filed her PAGA claim. Now, the August agreement, remember, had the PAGA carve-out. So she actually acted as if the PAGA, if the August agreement was in effect by filing the PAGA claim. I do think on unconscionability that remand is unnecessary because there's nothing unconscionable about this clause. We know from Concepcion that a class action waiver is not unconscionable. The history of the contract formation is before you. This was not an oppressive situation because she clearly had notice of it and had counsel. Even if you call it a contract of adhesion, that's no longer a basis to invalidate an arbitration agreement. There's briefing about gentry, but I think it's very clear that the gentry case is, in fact, there's a recent decision, Mortenson, from this case, from this court, doesn't address gentry, but it clearly sets signals that gentry will probably not be viewed as viable by the court. So I think the unconscionability arguments are really meritless and there's no need for a remand on that issue. Okay. Thank you, counsel. We appreciate the arguments in this case. The case just argued, Davis v. Nordstrom, will stand submitted.
judges: Smith, Noonan, Watford